IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GROUP ONE DEVELOPMENT, INC; GERARDO DIAZ-BLANCO; and GERARDO DIAZ, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-17-0375 |
| BANK OF LAKE MILLS and FORA FINANCIAL, LLC, | § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Fora Financial, LLC's ("Fora") Motion to Dismiss (Docket Entry No. 7) and Defendant Bank of Lake Mill's ("BLM") Motion to Dismiss (Docket Entry No. 8). For the reasons stated below, the motions will be granted.

I. **Factual and Procedural Background**

In September of 2016 plaintiffs Group One Development, Inc. ("Group One"), Gerardo Diaz-Blanco, and Gerardo Diaz obtained a loan from BLM.[1] During the loan process Plaintiffs dealt exclusively with Fora, and Fora eventually serviced the loan. Plaintiffs allege that Jonathan Gafni, a Fora representative, induced them to go forward with the loan by assuring them that the loan was "uncollateralized" and "unsecured" and that Fora had "no

---

[1]Except as noted, alleged facts are taken from Plaintiffs' Original Complaint ("Plaintiffs' Complaint"), Docket Entry No. 1.

right to any of [Plaintiffs'] personal belongings."[2] Plaintiffs relied on Gafni's statements even though the Business Loan and Security Agreement ("the Agreement") containing the terms of the loan states that borrowers grant a security interest in "Collateral" as defined in the Agreement.

Group One eventually obtained a loan of $159,400.00. The loan was guaranteed by Diaz-Blanco and Diaz. The Agreement contains a Payment Schedule that calls for 214 payments of $897.09 to be made each "Business Day" followed by a final payment of $896.74, for a total repayment of $192,874.00. That amount would include interest in the amount of $33,474.00, or approximately twenty-one percent of the principal.[3] Plaintiffs allege that the terms of the loan result in "an annual interest rate of more than 35.00%."[4]

Plaintiffs allege that Defendants have violated Texas lending and usury laws and that Gafni fraudulently induced Plaintiffs to enter into the Agreement. Plaintiffs also allege that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., the Racketeer Influenced and Corrupt

---

[2]Plaintiffs' Complaint, Docket Entry No. 1, p. 4 ¶ 11.

[3]Business Loan and Security Agreement Supplement, Docket Entry No. 1-1, p. 4.

[4]Plaintiffs' Complaint, Docket Entry No. 1, p. 4 ¶ 10. Plaintiffs do not explain how they calculated the alleged annual rate. But because the outcome is unaffected by the use of Plaintiffs' rate, the court will assume without deciding that Plaintiffs' calculations are accurate.

Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq., and Texas's Credit Service Organization Act ("CSOA"), TEX. FIN. CODE, Chapter 393. Plaintiffs seek damages and injunctive relief. Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the basis of Plaintiffs' failure to state a claim upon which relief can be granted.[5]

## II. Legal Standard

In a motion to dismiss under Rule 12(b)(6), the court must "'accep[t] all well-pleaded facts as true and vie[w] those facts in the light most favorable to the plaintiff.'" Bowlby v. City of Aberdeen, Mississippi, 681 F.3d 215, 219 (5th Cir. 2012) (citation omitted). Legal conclusions, however, "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Id. at 1965.

---

[5]Although Defendants move separately for dismissal, the arguments in Fora's Motion to Dismiss (Docket Entry No. 7) address all of Plaintiffs' claims and apply equally to either defendant. The court will therefore focus on the arguments in Fora's motion.

Dismissal under Rule 12(b)(6) is appropriate when a plaintiff's legal theory is incorrect: "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate . . . ." Neitzke v. Williams, 109 S. Ct. 1827, 1833 (1989). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 127 S. Ct. at 1966 (citation and internal quotation marks omitted).

### III. Analysis

#### A. Texas Lending and Usury Claims

Plaintiffs allege that Defendants charged an interest rate in excess of the rate permitted by the Texas Finance Code. Defendants argue that the Agreement clearly states that it will be governed by applicable federal law and, to the extent not preempted by federal law, by Wisconsin law.[6] Instead of responding to Defendants' argument, Plaintiffs argue that venue is proper in Texas.[7] Based

---

[6]Fora's Motion to Dismiss, Docket Entry No. 7, p. 9; BLM's Motion to Dismiss, Docket Entry No. 8, pp. 1-3.

[7]Plaintiffs' Response to Both Defendants' Rule 12(b)(6) Motions to Dismiss and Brief in Support Thereof ("Response"), Docket Entry No. 17, pp. 4-5 ¶ 11.

on the plain language of the Agreement[8] the court concludes that it is governed by Wisconsin law and, as applicable, federal law governing institutions insured by the Federal Deposit Insurance Corporation.

The viability of Plaintiffs' usury claims therefore depends on whether the interest rate is usurious under Wisconsin law. The relevant statute, which sets out maximum interest rates allowed under various circumstances, states that it "shall not apply to loans to corporations or limited liability companies." Wis. Stat. § 138.05(5). The statute also states that it "does not apply to any loan or forbearance in the amount of $150,000 or more made after May 26, 1978 unless secured by an encumbrance on a one- to four-family dwelling which the borrower uses as his or her principal place of residence." Id. at § 138.05(7).

Fora argues that the loan was made to a corporation, Group One, and therefore is not subject to a maximum interest rate under Wisconsin law. Diaz-Blanco and Diaz argue that they, too, are borrowers and that the loan therefore does not fall under the § 138.05(5) exception.[9] Plaintiffs cite the fact that in several places they signed individually as "borrowers." The court finds

---

[8]Agreement, Docket Entry No. 1-1, p. 11 ¶ 37 ("CONSEQUENTLY, THIS AGREEMENT WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDICINSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be governed by such laws.")

[9]Plaintiffs' Response, Docket Entry No. 17, p.5 ¶ 12.

Fora's Reply persuasive: (1) elsewhere in the Agreement Group One alone is identified as the borrower; (2) the loan proceeds were paid to Group One, not to the individual plaintiffs; and (3) the individual plaintiffs also signed the Agreement as guarantors, a step that would be redundant if they were already responsible for repayment as borrowers.[10] Moreover, even if the individual plaintiffs were borrowers, they offer no argument for why the exception in § 138.05(7) does not apply based on the loan amount of more than $150,000. The court therefore concludes that Plaintiffs' lending and usury claims fail as a matter of law.

## B. Fraudulent Inducement

Plaintiffs claim that were fraudulently induced into obtaining the loan by Gafni. The elements of fraud under Texas law are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury."

Langlois v. Wells Fargo Bank National Association, 581 F. App'x 421, 427 (5th Cir. 2014) (citing Aquaplex, Inc. v. Rancho La Valencia, Inc., 297 S.W.3d 768, 774 (Tex. 2009)). "One of the elements of a fraud claim is that the plaintiff actually and justifiably relied on the misrepresentation to suffer injury." DRC

---

[10]Fora's Reply to Plaintiffs' Response to Its Motion to Dismiss, Docket Entry No. 18, p. 3.

Parts & Accessories, L.L.C. v. VM Motori, S.P.A., 112 S.W.3d 854, 858 (Tex. App. — Houston [14th Dist.] 2003) (en banc) (emphasis in original) (citations omitted). "[R]eliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." Id.

Plaintiffs allege that they relied to their detriment upon the assurances of Fora representative John Gafni that the loan would be "unsecured" and "uncollateralized" in deciding to obtain the loan. Defendants argue that Plaintiffs' reliance was not justified as a matter of law because Gafni's oral representation was directly contradicted by the terms of the Agreement. The court agrees. Paragraph 10 of the Agreement, titled "**SECURITY INTEREST**" (emphasis in original), unambiguously states that Group One grants BLM a "continuing security interest in and to any and all 'Collateral'" as defined in the Agreement.[11] Because any reliance on Gafni's alleged statements was unjustified as a matter of law, Plaintiffs' allegations cannot support a claim for fraudulent inducement.

## C. FDCPA Claims

Plaintiffs allege that they are "consumers" and that defendant Fora is a "debt collector" as defined by the FDCPA. Fora argues, however, that the debt at issue is not a "debt" as defined by the

---

[11]Docket Entry No. 1-1, p. 6.

statute.[12] The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5). Plaintiffs do not allege that the transaction at issue was primarily for personal, family, or household purposes. And the Agreement states that "**Borrower certifies that the Loan proceeds will be used for business purposes only and will not be used for personal, family or household purposes.**"[13] The court therefore concludes that the obligation is not a "debt" under the FDCPA, that the cited FDCPA provisions do not apply, and that Plaintiffs' FDCPA claims therefore fail as a matter of law.

D.  RICO Claims

Plaintiffs allege that Defendants violated the RICO Act. Specifically, Plaintiffs allege that Defendants:

> (a) made extortionate extensions of credit to the Plaintiffs in violation of 18 U.S.C. § 892, by making loans to the Plaintiffs that were not enforceable in Texas and that were at a rate of interest in excess of 300% per annum.
> (b) knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a).

---

[12]Fora's Motion to Dismiss, Docket Entry No. 7, pp. 14-15.

[13]Docket Entry No. 1-1, p. 5 ¶ 4 (emphasis in original).

-8-

Plaintiffs' Complaint, Docket Entry No. 1, p. 12 ¶ 44. Plaintiffs bringing a RICO claim must allege "1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct, or control of an enterprise." Smith v. Houston Independent School District, --- F. Supp. 3d ---, ---, Civil Action No. H-16-401, 2017 WL 175814, at *5 (S.D. Tex. Jan. 17, 2017). "To establish a 'pattern of racketeering activity' a plaintiff must show 'at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity.'" Id. (citing Tel-Phonic Servs., Inc. v. TBS International, Inc., 975 F.2d 1134, 1139-40 (5th Cir. 1992)).

Fora argues that Plaintiffs' first predicate act is not supported by the alleged facts. An extension of credit is extortionate if "it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person." 18 U.S.C. § 891(6). Plaintiffs do not allege that either they or the Defendants understood at the time the loan was made that Defendants might use violence or criminal means to harm Plaintiffs if they delayed making or failed to make repayment. Moreover, even if Plaintiffs' first alleged predicate act were supported by factual allegations, Plaintiffs allege no factual basis for the claim that the transaction involved

"criminally derived property." Because Plaintiffs have failed to allege sufficient facts to support a finding of predicate acts necessary to establish a pattern of racketeering activity, Plaintiffs' RICO claims fail as a matter of law.

E. Credit Service Organization Act Claims

Plaintiffs allege several violations of Texas's CSOA. Plaintiffs allege that Defendants are "Credit Services Organizations" as defined in the CSOA. Fora argues that it does not qualify as a "credit services organization" because the alleged activities do not involve an "extension of consumer credit."[14] The court agrees. The statute defines an "extension of consumer credit" as "the right to defer payment of debt offered or granted primarily for personal, family, or household purposes or to incur the debt and defer its payment." TEX. FIN. CODE § 393.001(4). For the reasons stated above, the court concludes that the loan was not primarily for personal, family, or household purposes. Plaintiffs have failed to allege facts sufficient to support a finding that either defendant qualifies as a credit services organization under the statute. Plaintiffs' CSOA claims therefore fail as a matter of law.

---

[14]Fora's Motion to Dismiss, Docket Entry No. 7, pp. 15-16.

F.  Request for Injunctive Relief

Plaintiffs also seek injunctive relief. A preliminary injunction may be granted only if the movant shows a substantial likelihood of success on the merits. See Affiliated Professional Home Health Care Agency v. Shalala, 164 F.3d 282, 285 (5th Cir. 1999). Because Plaintiffs' substantive claims will be dismissed, Plaintiffs are not entitled to injunctive relief.

G.  Leave to Amend

Plaintiffs seek leave to amend if faced with dismissal. Rule 15(a) provides that leave to amend should be "freely give[n] . . . when justice so requires." FED. R. CIV. P. 15(a)(2). A court may deny leave to amend, however, if the amendment would be futile. Foman v. Davis, 83 S. Ct. 227, 230 (1962); accord Schiller v. Physicians Resource Group Inc., 342 F.3d 563, 566 (5th Cir. 2003); Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003). Plaintiffs have not indicated how they would amend their Complaint, identified any additional facts, or included any proposed amendments with their request. The court therefore concludes that amendment would be futile.

IV.  Conclusions and Order

For the reasons stated above, Plaintiffs' claims fail as a matter of law. Defendant Fora Financial, LLC's ("Fora") Motion to Dismiss (Docket Entry No. 7) and Defendant Bank of Lake Mill's

("BLM") Motion to Dismiss (Docket Entry No. 8) are therefore **GRANTED** and this action will be **dismissed** with prejudice.

**SIGNED** at Houston, Texas, on this 7th day of July, 2017.

----------

SIM LAKE
UNITED STATES DISTRICT JUDGE